UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REXFORD FUNDING, LLC, a Delaware
limited liability company,

        Plaintiff,

v.

JVS POWERSPORTS USA, INC., a
Michigan corporation, and JOHN STACH
a/k/a JOHN VON STACH, a Canadian
citizen,

        Defendants.
_____/

File No. 2:06-CV-79

HON. ROBERT HOLMES BELL

## **OPINION**

This matter is before the Court on the parties' cross-motions for partial summary judgment related to unpaid factored accounts. Plaintiff Rexford Funding, LLC ("Rexford"), contends that the factoring agreement Rexford entered into with Defendant JVS Powersports USA, Inc. ("JVS"), provided that if JVS failed to resolve a customer dispute, then JVS would become liable for all of the unpaid factored accounts. Rexford further contends that JVS has failed to resolve such customer disputes and that therefore JVS is obligated to Rexford for all unpaid factored accounts. Rexford also contends that Defendant John Stach is obligated to Rexford for the unpaid factored accounts because he executed a guarantee to Rexford on behalf of JVS. Defendants filed a cross-motion contending that the factoring agreement does not obligate JVS to pay Rexford the balances on the unpaid factored accounts. Defendants

further contend that any customers who have refused to pay have done so because of an inability to pay, an event for which Rexford bears the risk. For the reasons that follow, Plaintiff's motion for partial summary judgment is granted in part as to the interpretation of the contract and denied in part as to why customers are disputing their accounts. Defendants' cross-motion for partial summary judgment is denied.

I.

Rexford provides factoring services for companies across the United States. Factoring is "[t]he buying of accounts receivable at a discount. The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." BLACK'S LAW DICTIONARY 631 (8th ed. 2004). JVS sells motorbikes, all-terrain vehicles, utility vehicles and generators. John Stach is the president of JVS.

On August 5, 2005, Rexford and JVS signed a factoring agreement. The factoring agreement provided for JVS to sell to Rexford certain JVS accounts receivable (the "accounts"). Rexford purchased invoices with a gross face-value of $5,894,310.26. Pursuant to the factoring agreement, Rexford does not pay JVS until the accounts are collected from JVS' customers. The factoring agreement does, however, provide for Rexford to make advances to JVS. In this case, Rexford made an initial advance of $3,000,335.00 to JVS. On August 4, 2005, John Stach executed a guarantee making him personally liable for JVS' obligations to Rexford. The factoring agreement is governed by California law. The guarantee is governed by New York law.

Rexford has collected a total of $639,820.97 in payments on the JVS invoices. Rexford has been unable to collect $5,254,489.29. In a letter from Rexford to Defendants, dated November 8, 2005, Rexford alleged that JVS had committed two "events of default" under the factoring agreement, but declined to exercise its rights under the factoring agreement provided by the occurrence of an "event of default." In a letter from Rexford to Defendants, dated March 2, 2006, Rexford alleged that JVS had committed eight "events of default," each of which entitled Rexford to terminate the factoring agreement. In the letter Rexford advised that it was terminating the factoring agreement based on the "events of default," so all obligations were due and payable to Rexford.

II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C.*

3

*v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally*, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

When the moving party has the burden of persuasion, however, a somewhat different standard applies. "'[W]here the moving party has the burden – the plaintiff on a claim for relief or defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)). Thus, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Finally, the standards upon which the Court evaluates a motion for summary judgment do not change simply because the parties present cross-motions. *B.F. Goodrich Co. v. U.S. Filter Corp*. 245 F.3d 587, 593 (6th Cir. 2001). "'The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.'" *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

III.

There are two issues before the Court. First, the parties have filed cross-motions as to JVS' obligations under the factoring agreement. Rexford contends that under the terms of the factoring agreement, if a customer fails to pay for reasons other than financial inability and JVS does not resolve the customer's dispute, then Rexford can terminate the factoring agreement and JVS becomes liable to Rexford for all of the unpaid factored accounts. Defendants contend that under the terms of the factoring agreement Rexford assumed the risk of loss associated with customer non-payment for any reason. Second, Rexford contends that customers have disputed their accounts and have failed to pay for reasons other than financial inability. Rexford further contends that JVS failed to resolve customers' disputes and that therefore Rexford was entitled to terminate the factoring agreement, so Defendants are obligated to Rexford for the unpaid factored balances.

5

**A.  JVS' Obligations under the Factoring Agreement**

The factoring agreement is governed by California law.  Under California law, "'[i]t is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence.'"  *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 527, 41 P.3d 46 (Cal. 2002) (quoting *Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426, 439, 682 P.2d 1100 (Cal. 1984)).

> The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties.  "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [CAL. CIV. CODE § 1636 (Deering 2006).]  Such intent is to be inferred, if possible, solely from the written provisions of the contract. [CAL. CIV. CODE § 1639.]   The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [Cal. Civ. Code § 1644], controls judicial interpretation.  [Cal. Civ. Code § 1638.]"

*E.M.M.I., Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470, 84 P.3d 385 (Cal. 2004) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18, 900 P.2d 619 (Cal. 1995));  *accord AIU Ins. Co. v. Super. Ct. of Santa Clara County*, 51 Cal. 3d 807, 821-22, 799 P.2d 1253 (Cal. 1990).

The dispute as to the interpretation of the factoring agreement involves the interaction of several different provisions of the factoring agreement.  Section 7(a) of the factoring agreement sets forth the warranties and covenants that JVS made as to the accounts purchased by Rexford.  Section 7(a) of the factoring agreement provides:

> [JVS] hereby represents, warrants, and covenants that:
>
> (a) [JVS] has good title to the Collateral, including without limitation, the Accounts, free of any encumbrance except in [Rexford]'s favor; each Account is a bona fide, enforceable obligation created by the absolute sale and delivery of goods or the rendition of services in the ordinary course of business; . . . the selling terms of each Account shall not exceed sixty (60) days without the prior written consent of [Rexford];  [JVS'] Customer is unconditionally obligated to pay at maturity the full amount of each Account without defense; counterclaim or offset (regardless of merit); all documents in connection therewith are genuine; and the Customer will accept the goods or services.

(Factoring Agreement, § 7(a), Rexford's Mot., Docket #52, Ex. A.)  If an issue arises regarding an account after the account is acquired by Rexford, section 7(f) provides the applicable procedures.  Section 7(f) of the factoring agreement provides:

> [JVS] hereby represents, warrants, and covenants that:
>
> (f) [JVS] shall immediately notify [Rexford] in writing of any merchandise returns or Disputes and promptly notify [Rexford] in writing of any discounts, anticipation reductions or other unilateral deductions taken by Customers, credits and allowances to Customers. [JVS] will settle all Disputes at no cost or expense to [Rexford]; [Rexford]'s practice is to allow [JVS] sixty (60) days to do so. . . .

(*Id.* at § 7(f).)  Rider I to the factoring agreement defines "disputes" as:

> "<u>Disputes</u>" shall mean any cause for nonpayment of an Account, including, without limitation, any alleged defense, counterclaim, offset, dispute or other claim whether arising from or relating to the sale of goods or rendition of services or arising from or relating to any other transaction or occurrence, except for financial inability of [JVS'] Customers to pay an Account at maturity.

(*Id.*, Rider I, at 1.)  Sections 9(a) and 9(b) of the factoring agreement set forth the conditions under which the agreement can be terminated and the consequences of such a termination. Sections 9(a) and 9(b) provide:

7

(a) This agreement shall remain in full force and effect until terminated as follows:

. . .

(ii) Upon the occurrence of an Event of Default, [Rexford] may terminate this agreement at any time without notice.

(b) On the effective date of termination all Obligations shall become immediately due and payable in full without further notice or demand. [Rexford]'s rights with respect to Obligations owing to [Rexford], or chargeable to [JVS'] account, arising out of transactions having their inception prior to the effective date of termination, will not be affected by termination. Without limiting the foregoing, all of [Rexford]'s security interests and other rights in and to all Collateral shall continue to be operative until such Obligations have been fully and finally satisfied or [JVS] has given [Rexford] an indemnity satisfactory to [Rexford].

(*Id.* at § 9(a-b).)  Rider I of the factoring agreement defines "event of default:"

"Event of Default" shall mean the occurrence of any of the following events: . . . if [JVS] shall breach this agreement or any other agreement between [Rexford] and [JVS] . . . .

(*Id.*, Rider I, at 1-2.)  Rider I of the factoring agreement also defines "obligations:"

"Obligations" shall mean and include all debts, liabilities, obligations, covenants, duties and amounts of any nature whatsoever, for which [JVS] is now or hereafter obligated to [Rexford] . . . of every kind and description . . . direct or indirect, absolute or contingent, due or to become due, contractual or tortious, liquidated or unliquidated, whether arising under this or any other present or future agreement or other documentation, or by operation of law or otherwise now existing or hereafter arising . . . including, without limitation, any debt, liability or obligation now or hereafter owing from [JVS] to others, including without limitation any other present or future client(s) of [Rexford], which [Rexford] may have obtained or may obtain, by purchase, assignment, participation or otherwise, and further including without limitation, all interest, charges or any other payments [JVS] is required to make to [Rexford] together with all expenses and attorneys' fees and costs chargeable to [JVS'] account or incurred by [Rexford] in connection with [JVS'] account, whether provided for herein or in any such other agreement or documentation.  Without limiting the foregoing, Obligations shall include the amounts of all interest, commissions, customer late payment charges and bank related charges, costs, fees, expenses, taxes and all Accounts charged or chargeable to [JVS'] account hereunder.

8

(*Id.*, Rider I, at 2.)

These provisions must be interpreted in conjunction with each other. *See* CAL. CIV. CODE § 1641 (Deering 2006) ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Section 7(f) of the factoring agreement obligated JVS to "settle all Disputes at no cost or expense to [Rexford] . . . ." (Factoring Agreement, §7(f).) That section provides that JVS has sixty days to resolve a customer's "dispute." (*Id.*) The language of section 7(f) unambiguously imposes an obligation on JVS to resolve customer "disputes." The definition of "disputes" includes "any cause for nonpayment of an Account . . . except for financial inability of [JVS'] Customers" (*Id.*, Rider I, at 1.) Therefore, section 7(f) when read in conjunction with the definition of "disputes" imposes on JVS an obligation to resolve any cause for nonpayment, other than the financial inability of a customer to pay, within sixty days of being notified of the "dispute."

Section 9(a)(ii) of the factoring agreement gives Rexford the right to terminate the factoring agreement upon the occurrence of an "event of default." (*Id.* at § 9(a)(ii).) Among other events, a breach of the factoring agreement by JVS constitutes an "event of default." (*Id.*, Rider I, at 1-2.) JVS was obligated under the factoring agreement to resolve customer "disputes" not based on financial inability within sixty days of being notified of the "dispute," so JVS' failure to resolve such a "dispute" would constitute a breach of the factoring agreement and therefore an "event of default." Upon Rexford exercising its right to terminate the factoring agreement, "all Obligations shall become immediately due and

9

payable in full without further notice or demand." (*Id.* at § 9(b).) The next necessary question is what "obligations" includes.

The amount of damages is not before the Court as part of the cross-motions for summary judgment, however, the application of the definition of "obligations" is a necessary component of the issues before the Court on summary judgment. In relevant part Rider I of the factoring agreement defines "obligations" as:

> all debts, liabilities, obligations, covenants, duties and amounts of any nature whatsoever, for which [JVS] is now or hereafter obligated to [Rexford] . . . of every kind and description . . . direct or indirect, absolute or contingent, due or to become due, contractual or tortious, liquidated or unliquidated, whether arising under this or any other present or future agreement . . . .

(*Id.*, Rider I, at 2.) In section 7(a) JVS covenanted that each customer account which JVS sold to Rexford was "a bona fide, enforceable obligation" and that the customer was "unconditionally obligated to pay at maturity the full amount of each Account without defense, counterclaim or offset (regardless of merit) . . . ." (*Id.* at § 7(a).) Thus, JVS covenanted that the "full amount of each Account" was payable at maturity to Rexford. (*Id.*) JVS' "obligations" thereby include the "full amount of each Account" which JVS sold to Rexford.

Defendants argue that this interpretation of the factoring agreement converts the factoring agreement to an agreement with recourse and that the factoring agreement lacks the language required by California law for an agreement to be with recourse. Under California law, when an entity assigns all of its rights, title and interest in a note, it is equivalent to endorsing the note without recourse, unless the endorsement contains contrary language.

10

*Gaetani v. Goss-Golden W. Sheet Metal Profit Sharing Plan*, 84 Cal. App. 4th 1118, 1120, 101 Cal. Rptr. 2d 432 (Cal. Ct. App. 2000); *Mathes v. Bangs*, 128 Cal. App. 171, 172-73, 16 P.2d 749 (Cal. Ct. App. 1932); *Hammond Lumber Co. v. Kearsley*, 36 Cal. App. 431, 433, 172 P. 404 (Cal. Ct. App. 1918). Defendants argue that the factoring agreement is similar to the endorsements in the three cited cases because section 2 of the factoring agreement provides:

> [JVS] hereby assigns and sells to [Rexford], as absolute owner, and [Rexford] hereby purchases from [JVS], certain Accounts which arise from [JVS'] sale of merchandise or rendition of services. [Rexford]'s purchase of and acquisition of title to each Account will be effective as of the date of its creation and will be entered on [Rexford]'s books when [JVS] furnishes [Rexford] with a copy of the invoice evidencing such Account or electronically transmits to [Rexford] the details of the invoice . . . .

(Factoring Agreement, § 2(a).) Defendants argue that the above section grants Rexford the form of ownership present in *Gaetani* and the other cases. Based on this, Defendants argue that absent explicit language, the factoring agreement must be construed as being without recourse.

The cases cited by Defendants involved the endorsement of a check or a note. These cases set forth a presumption that applies when there is an assignment of all rights, title and interests, but the endorsement does not specifically address the issue of recourse. These cases are distinguishable as there is no indication that such a presumption applies to transactions with a detailed agreement between the parties, such as the factoring agreement. The Court therefore finds that the presumption set forth in *Gaetani* and the other cases does not apply to this case. Even if the presumption does apply to the factoring agreement, the

11

detailed provisions of the factoring agreement rebut the presumption. The California rule requires the use of the words "'without recourse' or words of equivalent effect . . . ." *Gaetani*, 84 Cal. App. 4th at 1120. The detailed provisions of the factoring agreement are words of equivalent effect. As the Court's earlier analysis explained, the factoring agreement set forth the responsibilities and obligations of the parties in the event of a customer's failure to pay. Therefore, the Court's earlier interpretation of the factoring agreement is consistent with *Gaetani* and the other cases.

Rexford's motion for summary judgment is granted in part as to the interpretation of the factoring agreement. Defendants' cross-motion as to whether the factoring agreement is with or without recourse is denied.

**B. Whether There are Unresolved Disputes Involving Customer Accounts**

Based on the Court's determination that as a matter of law JVS was obligated to resolve customer "disputes" not based on the customer's financial inability to pay, the Court now addresses Rexford's contention that JVS has failed to resolve such customer "disputes." In order for Rexford to have been entitled to terminate the factoring agreement, the Court must determine if Rexford has established that a customer had "disputed" its account, for reasons other than financial inability to pay, and that JVS failed to resolve that "dispute." Based on the Court's interpretation of the factoring agreement set forth above, Rexford need only establish a single such unresolved "dispute" in order for there to have been an "event of default" that entitled Rexford to terminate the factoring agreement.

Rexford alleges that the following JVS customers "dispute" their accounts and have refused to pay:

> Brian Clark Equipment Company, Inc.; Greenbriar Feed & Hardware; Greenfield Mechanical; Lee Small Engines; Sharper Distributing; Tom's Cycle; Lanpheres Electric; Ridings Ray Motors, Inc.; and T&T Auto Sales.

(Sept. James Aff. ¶4, Rexford's Mot., Ex. N.) A representative of Rexford contacted these companies and was provided the following reasons for non-payment: "(1) JVS failed to ship the goods; (2) the goods shipped by JVS were damaged or defective; (3) the goods shipped by JVS were used and/or (4) the goods were sold on consignment." (*Id.* at ¶5.) The affidavit does not identify the explanation provided by each individual company. Rexford also provides another affidavit which has as an attachment the notes of the representative who called the companies. (Oct. James Aff., Rexford's Resp., Docket #56, Ex. C.) Rexford alleges that after learning of these disputes, it advised JVS of the "disputes." Rexford alleges that in violation of the factoring agreement JVS has failed to resolve these "disputes." (Fortunato Aff. ¶17, Rexford's Mot., Ex. R.) Rexford also provides letters it received from GHI Automotive Services and Greenfield Mechanical, in which these two customers "dispute" their accounts. (Letter from GHI Automotive Services to Rexford, Rexford's Mot., Ex. S; Letter from Greenfield Mechanical, Rexford's Mot., Ex. T.)

Defendants first respond that there is a question as to the material facts related to why JVS' customers have not paid Rexford. After the factoring agreement was signed, each of JVS' customers verified in writing "that there are no joint check requests, consignment agreements, offsets, credits, debits, defenses, claims, or counterclaims of any kind relating"

13

to their accounts. (Customer Verification Letters, Defs.' Joint Br., Docket #54, Ex. E.) Defendants have provided a verification letter from each of the companies Rexford identified as having "disputed" their accounts. Based on these customer verifications, Defendants argue that there are questions of material fact related to why JVS' customers have failed to pay.

Rexford has offered evidence indicating that the parties are "disputing" their accounts for reasons other than a financial inability to pay, however, the verification letters could support the contrary conclusion. The potential for different reasonable triers of fact to reach contrary conclusions on this issue is bolstered by the proximity of the verification letters to the time Rexford learned of the alleged "disputes." For example, GHI Automotive Services verified that its account with JVS was payable in full on August 30, 2005, but then on November 18, 2005, GHI sent Rexford a letter "disputing" the account. The Court's review of the documents indicates that this time-table is typically for the amount of time between verification and "dispute." This proximity could support an inference that these customers "disputed" their accounts shortly after verification because of financial inability, but the proximity could equally support the inference that the customers completed the verifications despite then existing "disputes." Thus, there is a genuine issue of material fact as to why the customers are "disputing" their accounts, so Rexford's motion for partial summary judgment is denied in part as to why customers are "disputing" their accounts.

IV.

For the foregoing reasons, Rexford's motion for partial summary judgment is granted in part as to the interpretation of the factoring agreement and denied in part as to why customers are "disputing" their accounts. Defendants' cross-motion for partial summary judgment as to whether the factoring agreement is with or without recourse is denied.


Date:   February 23, 2007          /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE